IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EDDIE LEE WILSON, AND CHESTER JACKSON, SR., A/N/F CHESTER JACKSON, JR. | § § § | |
| **Plaintiffs,** | § § | CIVIL ACTION NO. 1:20-cv-311 |
| VS. | § § | |
| ROBERT RILEY BAUCOM, DEPUTY JOHN K. BENNETT, SHERIFF THOMAS NORSWORTHY, CITY OF CALDWELL, AND BURLESON COUNTY | § § § § § | |
| **Defendants.** | § | |

### DEFENDANT BURLESON COUNTY'S NOTICE OF REMOVAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Defendant Burleson County and files this its Notice of Removal pursuant to 28 U.S.C. §§ 1441, 1443 and 1446, on the basis of federal question jurisdiction. In support thereof, Defendant Burleson County would respectfully show this Honorable Court the following:

### I.
### Brief Statement of Facts

1.     On February 24, 2020, this cause of action was commenced by Plaintiffs Eddie Lee Wilson and Chester Jackson, Sr., a/n/f Chester Jackson, Jr. against Defendants Robert Riley Baucom, John K. Bennett, Thomas Norsworthy, City of Caldwell, and Burleson County in the 335th Judicial District Court of Burleson County, Texas. Plaintiffs allege violation of United States Constitutional rights, including violation of the Fourth Amendment. A copy of Plaintiffs' Original Petition is attached hereto as Exhibit A and is incorporated herein by reference.

2.      As of this date, none of the named Defendants have been served with Plaintiffs' Original Petition. Removal is being requested within thirty days of suit being filed, so it is timely filed. Since no named Defendants have been served to date, consent from the other named Defendants is not necessary. 28 U.S.C. §1446 (a)(2)(A).

3.      Plaintiffs sue Defendant Burleson County for alleged violations of 42 U.S.C. §§ 1983 and 1998. Plaintiffs complains that Chester Jackson, Jr. was deprived of his federally protected rights by Defendants, asserting violation of 42 U.S.C. §1983 for alleged deprivation of Jackson, Jr.'s constitutional rights.  Plaintiffs' claims are within the original and removal jurisdiction of this Honorable Court.  This litigation is removable pursuant to 28 U.S.C. §§1331 and 1343.

## II.
## Arguments and Authorities

4.      The removing party bears the burden of establishing that federal jurisdiction exists.  In this case, it is undisputed that Plaintiffs pursue claims for relief under 42 U.S.C. § 1983, asserting violation of the Fourth Amendment to the United States Constitution.  Such claims are clearly within the original and removal jurisdiction of the federal courts.  *See*, 28 U.S.C. §§1331, 1343, 1441, 1443 and 1446; and *Brown v. Southwestern Bell Telephone Company*, 901 F.2d 1250, 1254 (5th Cir. 1990)(holding that a plaintiff's assertion of a right based upon a federal statute arose under federal law and was removable pursuant to 28 U.S.C. §1441(b)).

5.      Defendant Burleson County desires and is entitled to have the cause removed from the 335th Judicial District Court of Burleson County, Texas, to the United States District Court for the Western District of Texas, Austin Division, such being the District where said suit is pending.

6.     Written notice of the filing of this Notice of Removal will be given to Plaintiffs and their counsel of record as required by law. 28 U.S.C. §1446.

7.     A true and correct copy of this Notice of Removal will be filed with the Clerk of the 335th Judicial District Court of Burleson County, Texas. 28 U.S.C. §1446.

WHEREFORE, PREMISES CONSIDERED, Defendant Burleson County prays that this action be removed to this Honorable Court and that this Honorable Court accept jurisdiction of this action and henceforth that this action be placed on the docket of this Honorable Court for further proceedings, the same as though this action had originally been instituted in this Honorable Court.

Respectfully submitted,

**FLETCHER, FARLEY,**
**SHIPMAN & SALINAS, L.L.P.**
2530 Walsh Tarlton, Suite 150
Austin, Texas  78746
(512)  476-5300
FAX (512)  476-5771

By:/s/ Joanna Lippman Salinas
Joanna Lippman Salinas
State Bar No. 00791122
joanna.salinas@fletcherfarley.com

Attorneys for Defendant, *Burleson County*

**Certificate of Service**

I here certify that a true and correct copy of the foregoing **Defendant Burleson County's Notice of Removal** has been provided to:

U.A. Lewis
Okwudili Onyekwelu
Damion Millington
**THE LEWIS LAW GROUP**
99 Detering
Houston, Texas 77077

by facsimile, in accordance with the Federal Rules of Civil Procedure, on <u>March 23, 2020.</u>

<u>/s/ Joanna Lippman Salinas</u>
Joanna Lippman Salinas

# EXHIBIT A

29987

Civil Case No._____

| | | |
|---|---|---|
| EDDIE LEE WILSON, AND | § | |
| CHESTER JACKSON, SR., A/N/F | § | IN THE DISTRICT COURT |
| CHESTER JACKSON, JR., | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | 335th_____JUDICIAL DISTRICT |
| | § | |
| ROBERT RILEY BAUCOM, | § | |
| DEPUTY JOHN K. BENNETT, | § | |
| SHERIFF THOMAS | § | BURLESON COUNTY, TEXAS |
| NORSWORTHY, CITY OF | § | |
| CALDWELL, AND BURLESON | § | |
| COUNTY, | | |

DEFENDANTS.

## ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, Eddie Lee Wilson, and Chester Jackson Sr. as next Friend for Chester Jackson, Jr., file this original complaint complaining of the following defendants, Robert Riley Baucom("Baucom"), Deputy John K. Bennett("Bennett"), Sheriff Thomas Norsworthy("Norsworthy"), individually, and City of Caldwell, Burleson County would respectfully show as follows:

## I. INTRODUCTION

On Friday, April 19, a Friday, Chester was having a mental crisis that his family recognized, so they contacted 911 to get him some help and transferred to a mental health facility in Houston, Texas. Burleson County Deputy Sgt. John Bennett arrived at Chester Jackson's residence. Chester's family made the Burleson county's sheriff office aware through deputy Bennett that Chester was having a mental crisis but the crisis the family recognized was not taken seriously and misidentified, due to poor training, public intoxication. Chester was arrested.

Chester was taken into jail custody based on a perceived crime. Chester Jackson, Jr. was brought before Robert Urbanosky, Justice of the Peace for Precinct 4 , for a magistrate hearing, on April 21, 2019.  Urbanosky threatened Chester with a "rope," claiming he had a rope for guys that act like Chester.  On Saturday, April 20, before daylight around 3:30 a.m., after the magistrate hearing, Jackson was moved from one cell to another cell. The cell Chester, who was in a mental crisis, was housed in had a long wire cord hanging from the ceiling, and a metal rod.

Before noon his father, Chester Jackson, Sr., was called and advised he was released, but instead of his father, his mother Ms. Eddie Wilson, and partner Heather arrived and he was suddenly not eligible for release since he was having a mental crisis. Later that Saturday evening, Chester remained in custody. Robert Riley Baucom enters his cell to move him from one cell to another after they arrived at the new cell Defendant, Baucom picked Chester up

from the ground and Baucom shoved Chester. Baucom caused Chester's body to strike a metal bed and his head against a cement wall and finally striking his head on a metal toilet before landing back on the ground. Baucom immediately exclaimed that Chester simply "fell." Chester went on to accuse Caldwell officer of throwing him.

On Sunday, April 21, 30 mins after assault just after midnight at 12:01, Chester allegedly signed the Justice of the Peace admonishment and agreed to time served. He was not released but continued to be illegally held in custody, by Burleson County and its Sheriff, and eventually transported to a mental health facility in Austin, TX. He demanded to be released since he was not in custody. According to the 911 call, he was given a sedation cocktail at Cross Creek Hospital. At the same time, Chester was also placed in a personal "hold" by John W. at Cross Creek Hospital for 5 minutes. Upon his release from the personal hold, Chester was unconscious, his respirations were shallow, pulse was faint, non-responsive, and lying supine. He went into complete cardiac arrest due to the personal "hold." To add insult to injury, literally, Burleson County District attorney elected to charge Chester Jackson with a felony assault charge of a public servant. The charges were based on an allegation that he bit an officer while in Burleson County. One of the same officers that stood by and failed to intervene or report the excessive force captured on video by Baucom. Although she was fully aware that Chester was being held and remained in custody after he served his time due to having a mental crisis, and it was after Chester struck his head as he was assaulted by Baucom. A notification of mental health detention, but no warrant was dated after the transport to Cross Creek on April

21, 2019. Thursday, May 30, 911 tape is released with more disturbing facts. Today he is stable, improving condition, and out of ICU.

## II. Parties

1. Chester Jackson, P.O. Box 27353 Houston, TX 77227

2. Robert Riley Baucom who may be served wherever he may be found.

3. Deputy John K. Bennett who may be served wherever he may be found.

4. Sheriff Thomas Norsworthy who may be served wherever he may be found.

5. City of Caldwell who may be served wherever the Mayor may be found.

6. Burleson County who may be served wherever the County Judge may be found.

## III. Jurisdiction and Venue

7. This Court has jurisdiction over Plaintiff's state and federal claims, under 28 U.S.C. sections 1331 and 2201, 42 U.S.C sections 1983 and 1988, and the Fourth, and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction.

8. Venue is proper in this Court under 28 U.S.C. section 1391(b) because the incidents at issue occurred in Bexar County, Texas.

## IV. Facts

9. On Friday, April 19, a Friday, Chester was having a mental crisis that his family recognized, so they contacted 911 to get him some help and transferred to a mental health facility in Houston, Texas.

10. Burleson County Deputy Sgt. Bennett arrived at Chester Jackson's residence.

*Arrest*

11.    Chester's family made the Burleson county's sheriff office aware through deputy Bennett that Chester was having a mental crisis but the crisis the family recognized was not taken seriously and misidentified, due to poor training, public intoxication.

12.    Chester was arrested.



13.    Chester was accused of being on the street drug phencyclidine ("PCP") and arrested.

14.    Video recordings of Chesters's arrest clearly demonstrate that Chester had signs and symptoms of a mental health crisis misidentified as PCP intoxication according to his lack of police training, including at the basic academy.

15.    He decided to take Chester into jail custody based on a perceived crime.

16.    Chester Jackson, Jr. was brought before Robert Urbanosky, Justice of the Peace for Precinct 4 ("Urbanosky"), for a magistrate hearing.





17.   As Chester was before Urbanosky, Urbanosky threatened Chester with a "rope," claiming he had a rope for guys that act like Chester.

18.   On Saturday, April 20, before daylight around 3:30 a.m., after the magistrate hearing, Jackson was moved from one cell to another cell.

19.   The cell Chester, who was in a mental crisis, was housed in had a long wire cord hanging from the ceiling, and a metal rod.

 

20.    Before noon his father, Chester Jackson, Sr., was called and advised he was released, but instead of his father, his mother Ms. Eddie Wilson, and partner Heather arrived within the hour of the call advising of the release.

21.    After Heather and his Mother arrived Chester was suddenly not eligible for release any longer since he was having a mental crisis.

22.    Chester's mother requested a jail visit with her son since it was Saturday and during visiting hours.

23.    She was denied, claiming Chester was too dangerous.

24.    Later that Saturday evening, Chester remained in custody.

*Assault*

25.    At 11:23 pm the defendant, Robert Riley Baucom enters his cell to move him from one cell to another, with full compliance by Chester.

26.    Chester is depicted on video shackled and handcuffed.

27.    Shortly after that Chester arrives at the new cell location as he remained shackled at the ankles and handcuffed Chester was on the ground. Defendant, Baucom picked Chester up from the ground and Baucom shoved Chester.

28.    Baucom caused Chester's body to strike a metal bed and his head against a cement wall and finally striking his head on a metal toilet before landing back on the ground.



29.    Baucom immediately exclaimed that Chester simply "fell." Chester went on to accuse

Caldwell officer of throwing him.



30.     On Sunday, April 21, *30 mins after assault* just after midnight at 12:01. Chester

allegedly signed the JP Admonishment and agreed to time served.

31.     He was not released but continued to be illegally held in custody, by Burleson County

and its Sheriff.

32.     He should have been released from custody if he had indeed served his time, but was

not.



33.     Later on April 21, 2019, Chester is walking and talking and appears to be in good physical condition.

34.     He never saw medical personnel or was he medically treated while in the Burleson Jail.

35.     He was never cleared medically.

36.     He was taken from the jail and transported by two Burleson County deputies to Cross Creek Hospital in Austin, a psychiatric hospital.

37.     The video depicts him to be non-violent.

***Illegal Documents***

38.     The Criminal complaint was sworn in an effort to establish facts supporting the allegations on April 23, 2019, after Chester Jackson was in Austin, Texas on life support.



39.     There was no mental health warrant signed to allow for Chester Jackson's custody.

40.     He demanded to be released since he was not in custody.

41.     According to the 911 call, he was given a sedation cocktail at Cross Creek Hospital.

42.     At the same time, Chester was also placed in a personal "hold" by John W. at Cross Creek Hospital for 5 minutes.

43.     Upon his release from the personal hold, Chester was unconscious, his respirations were shallow, pulse was faint, non-responsive, and lying supine.

44.     He went into complete cardiac arrest due to the personal "hold."

45.     Nobody from Burleson County informed anyone in Chester's family that Chester had been transported to Austin.

46.     Burleson County was aware that his family was waiting for his release from custody.

47.     Burleson County was aware that his family intended to take Chester to Houston for mental health treatment.

48.     It was not until Monday, April 22, 2019, that the Jackson family learned Chester was at St. David's in Austin on life support.

49.     Chester's family was not given any information on how their son, partner, and father ended up in Austin on life support, from Burleson County, other than small minor details.

50.     It was not until Monday, May 20, 2019, when Chester's family held a rally for support, to demand answers, gain withheld information, and seek justice.

51.    On Tuesday, May 21, 2019, Texas Rangers commenced an investigation into what happened to Chester Jackson while in custody of the former Burleson County Sheriff, Thomas Norsworthy.

52.    The investigation determined that Justice of the Peace Urbanosky had made comments relating to having a rope for guys that act like Chester.

53.    The investigation determined that Caldwell officer Baucom had engaged in conduct that amounted to a felony assaulted Chester Jackson, under the Texas Penal Code.

54.    Baucom is placed on paid administrative leave.

55.    Although Baucom had engaged in conduct that amounted to a felony assaulted Chester Jackson, under the Texas Penal Code. Burleson County District attorney elected to charge Baucom with a misdemeanor, official oppression charge.

56.    Baucom pled guilty and was sentenced to one-year probation, and can never serve as an officer again.

57.    To add insult to injury, literally, Burleson County District attorney elected to charge Chester Jackson with a felony assault charge of a public servant.

58.    The charges were based on an allegation that he bit an officer while in Burleson County.

59.    One of the same officers that stood by and failed to intervene or report the excessive force captured on video by Baucom.

60.    Although she was fully aware that Chester was being held in custody due to having a mental crisis, and it was after Chester struck his head as he was assaulted by Baucom.

61.     A notification of mental health detention, but no warrant was dated after the transport to Cross Creek on April 21, 2019.

62.     Thursday, May 30, 911 tape is released with more disturbing facts.

63.     Today he is stable, improving condition, and out of ICU.

***Robert Riley Baucom's Troubling History in Law Enforcement***

64.     Robert Riley Baucom has had a law enforcement career for several years leading up to his service with the Caldwell Police department, over 8 years. He started his career in law enforcement with the Washington County Sheriff's office as a jailer in 2006, then patrol officer in 2009. He was disciplined on many occasions as a Washington County officer, due to his poor judgment and eventually terminated. The last discipline at Washington County was related to inappropriate conduct with a minor. Upon termination he was promptly hired by Burleson County as a jailer, in 2014, he then became an officer with the Caldwell Police department with Thomas Norsworthy was Chief of Police, in 2015. He is what many refer to as a gypsy cop[1]. City of Caldwell has a practice of hiring officers that have resigned due to questionable behavior at other agencies since they were never actually fired and resigned instead.

---

[1]  Individual who have found jobs at different agencies even after exhibiting signs that they might be ill suited for police work. https://www.cbsnews.com/news/gypsy-cops-with-questionable-pasts-hired-by-different-departments-lack-of-oversight-police.; https://www.nytimes.com/2016/09/11/us/whereabouts-of-cast-out-police-officers-other-cities-often-hire-them.html

## CLAIMS FOR RELIEF

### Claim 1-Malicious Prosecution

65.    Each of the preceding paragraphs is herein incorporated as if restated fully.

66.    April 23, 2019, Chester was charged and prosecuted for public intoxication, although he

pleaded to time served two days prior to the charge, while in an identified mental crisis.

67.    The prosecution was instituted by Burleson County Sheriff Deputy Bennett, and without

probable cause to do so.

### Claim 2-42 U.S.C. § 1983, Fourth Amendment Illegal Seizure

68.    Each of the preceding paragraphs is herein incorporated as if restated fully.

69.    This suit is brought pursuant to 42 U.S.C. section 1983, which is entitled the Civil

Rights Act. The critical language of the Civil Rights Act sets forth, in part:

> "*Every person who, under color of any statute, ordinance, regulation, custom, or usage,
> of any State or Territory or the District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in equity, or other
> proper proceeding for redress." Fourteenth and Fourth Amendments: Due Process,
> Unlawful Search, Seizure, and Detention.*

70.    Chester was unconstitutionally arrested by Deputy Bennett and illegally held in the

custody of the Burleson County Sheriff.

71.    On April 19, Chester Jackson was arrested without probable cause by Deputy Bennet

because according to Bennett, Jackson was acting as if he was on PCP.

72.    Although there was no evidence to confirm this, except Officer Bennet's own "hunch".

73.     On April 20, after Chester Jackson had duly served the one day sentence handed down to him by Justice of Peace Urbanosky, the staff at Burleson County Jail continued to detain him past the sentence.

### Claim 3-42 U.S.C. § 1983, Excessive Force

74.     Each of the preceding paragraphs is herein incorporated as if restated fully.

75.     While in the custody of Burleson County Jail, Chester was subject to the use of excessive force. On April 21, 2019, while being held illegally, Chester was being moved by officers of the county jail to another cell.

76.     When  Chester arrived at the new cell, his hands were handcuffed behind his back, posing no threat to anyone, Chester was violently pushed to the ground by defendant Baucom.

77.     During the fall, Chester first made contact with a metal bed. His head, back, and neck then made an impact with a cement wall and a metal toilet.

78.     One day later Chester was in the Intensive Care Unit in an Austin hospital on life support.

### Claim 4-42 U.S.C. § 1983, Failure to Provide Medical Care, Delay in Medical Care

79.      Each of the preceding paragraphs is herein incorporated as if restated fully.

80.     At all times that Chester Jackson was in the Burleson County Jail, he did not receive any medical attention from medical personnel.

81.     Although Chester Jackson was clearly suffering from a mental health breakdown as evidenced by the 911 call made by his family, Burleson County never offered him the

appropriate mental health evaluation. Instead, he was treated like a criminal, although he committed no crime, he was simply suffering from a mental crisis.

82.     During Chester's stay at the county jail, Officer Baucom violently pushed him into a cell causing him to hit his head on the metal toilet, Burleson County Jail staff continued to refuse to offer him any medical treatment for any physical injuries that may have occurred as a result of the assault by the officer.

### Claim 5-Negligent Hiring

83.     Each of the preceding paragraphs is herein incorporated as if restated fully.

84.     Defendant, City of Caldwell was negligent in hiring Baucom because he was allowed to engage in jobs above and beyond what his license allowed for as a peace officer.

85.     Baucom had a long history of incompetence, poor judgment, and criminal activity implications prior to being hired as a Burleson County Jailer, and ultimately a Caldwell officer.

86.     Evidenced by Baucom coming into the Burleson County Jail and aided officers in the transportation of an inmate although he had no training in this field and there were more than enough officers to transport this inmate.

### Claim 6-Failure to Train

87.     Each of the preceding paragraphs is herein incorporated as if restated fully.

*Deputy John K. Bennett*

88.     Bennett, a deputy for Burleson County, claimed to be a trained drug recognition officer, he earned a Drug Recognition Expert Certification from Bill Blackwood LEMI of Texas.

89.     Although Bill Blackwood LEMI of Texas offers training in mental health for officers, Bennett has absolutely no mental health training.

90.     Bennett dismissed Chester's parent's pleas for help and Chester's need mental health attention.

91.     Bennett concluded that Chester was on PCP.

92.     Bennett assessed that Chester was on PCP due to Chester being cold to the touch and slow to respond to inquiries by Bennett.

93.     Bennett failed to recognize the difference between individual suffering from a mental crisis and intoxication, due to his lack of training by Burleson County.

94.     Bennett failed to contact medical personnel to assist with ruling out a medical concern.

95.     Bennett's lack of training, allowed him to arrive at the scene, ignore the statements of witnesses and family members affirmatively stating that Chester was suffering from a mental crisis, instead of working on a "hunch" and placing Chester under arrest.

### Officer Robert Riley Baucom

96.     Defendant Baucom's inadequate training by The City of Caldwell and Burleson County led to serious injuries to Chester when Baucom assaulted the shackled and handcuffed Chester in his display of excessive force.

97.     Baucom's lack of training in the use of force was evident in his interactions with Chester.

98.     The City of Caldwell provided no use of force training to Baucom as it allowed him to roam about the county of Burleson.

99.     Burleson County allowed Baucom to freely roam throughout its jail throughout the night and operate as a jailer, although not only was he unlicensed, as required by Texas Gov. Code, he was not even employed by Burleson County.

100.    Since Burleson allowed Baucom to operate as a jailer they had a duty to train him in the use of force as well. They failed to adequately train Baucom on the use of force.

101.    Burleson failed to train its officers on intervening on the excessive use of force.

102.    In addition, Burleson failed to train its officers on reporting excessive use of force.

**Claim 7-Failure to Supervise**

103.    Each of the preceding paragraphs is herein incorporated as if restated fully.

104.    Baucom was allowed to run loose in the streets of Caldwell due to the City of Caldwell's Failure to Supervise its officer, Baucom.

105.    He was documented to be in the Burleson County jail on several occasions although he did not a purpose on being there within the jail beyond processing on the dates and time he was in jail.

106.    He was able to enter the Burleson County jail and remain although he was not assigned to the jail nor licensed to be in the jail in April 2019.

107.    The lack of supervision over Defendant Baucom gave him unfettered discretion to do as he pleased in the county jail.

108.    Baucom was able to move Chester from cell to cell without reason.

109.    Furthermore, several documents pertaining to the arrest are unaccounted for throughout Chester's stay in the jail.

### Claim 8-ADA and Rehabilitation Act Claims

110.    Each of the preceding paragraphs is herein incorporated as if restated fully.

111.    Chester was arrested due to Burleson County Deputy John Bennett's misperceived the effects of his mental illness as criminal activity, namely public intoxication.

112.    In addition, they failed to reasonably accommodate Chester's disability in the course of investigation or arrest, causing him to suffer greater injury due to the belief that he had to defend himself, resulting in him being indicted for a felony based on his alleged actions.

113.    Chester was tossed while handcuffed by Defendant Baucom after being arrested at his home by Defendant Bennett.

114.    His parents told Defendant Bennett that Chester was in need of mental help but Bennett refused to believe Chester was mentally ill. John.K. Bennett arrested Chester and charged him with public intoxication. He chose to ignore Chester's mother's statements and her requests for treatment for her son.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Chester Jackson, respectfully prays that Defendants, be summoned to appear and answer herein and that upon a final hearing of this cause, that judgment be entered for the Plaintiff and against each Defendants, both jointly and severally, for all damages requested herein, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity. Punish each individual Defendant, and deter others from engaging in similar conduct; Plaintiffs assert that the severe injuries, pain suffering, physical impairment, and harm was the result of Chester Jackson suffered was the result of government actors conduct, individually, and collectively, motivated by ill intent, done recklessly or with callous deliberate indifference to the federally protected rights of  Chester Jackson, and hereby entitle Plaintiffs to punitive and exemplary damages. Equitable relief, including, without limitation, that Burleson County, and City of Caldwell be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

Respectfully submitted,
The Lewis Law Group
By:/s/U.A. Lewis
U.A. Lewis
SBN: 24076511
FBN: 1645666
P.O. BOX 27353
HOUSTON, TX 77227
PHONE: (713) 570-6555

FAX: (713) 581-1017
Myattorneyatlaw@Gmail.com
ATTORNEY FOR PLAINTIFF
By:/s/Okwudili Onyekwelu
Okwudili Onyekwelu
SBN: 24110867
FBN: 3503446
oonyekwelu@thelewislaw.com
By: /s/Damion Millington
Damion Millington
SBN: 24111178
FBN: 3503447
dmillington@thelewislaw.com