**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **EDDIE LEE WILSON, AND CHESTER** | § | |
| **JACKSON, SR., A/N/F CHESTER** | § | |
| **JACKSON, JR.,** | § | |
| **Plaintiffs,** | § | |
| **V.** | § | **A-20-CV-311-RP** |
| | § | |
| **ROBERT RILEY BAUCOM, DEPUTY** | § | |
| **JOHN K. BENNETT, SHERIFF** | § | |
| **THOMAS NORSWORTHY, CITY OF** | § | |
| **CALDWELL, AND BURLESON** | § | |
| **COUNTY,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant City of Caldwell's Renewed Motion to Dismiss for Failure to State a Claim (Dkt. #16), Defendant Burleson County's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #20), and all related briefing.[1] Having considered the parties' briefing and applicable law, and finding that oral arguments are not necessary, the undersigned submits the following Report and Recommendation to the District Court.

## I.   BACKGROUND[2]

Chester Jackson, Jr.'s ("Jackson") family called 911 because he was having a "mental crisis" and they hoped to have him taken to a mental health facility in Houston, Texas. Dkt. #13 (FAC) at ¶ 9. Burleson County Deputy Sgt. Bennett arrived and arrested Jackson for public

---

[1] The motions and related briefing were referred to the undersigned for a Report and Recommendation by United States District Judge, Robert Pitman, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

[2] All well-pleaded facts are taken as true at this stage of the proceedings. However, as the undersigned will not, Plaintiffs' allegations and claim are not entirely clear.

intoxication, even though Jackson's family made him aware Jackson was having a mental crisis. *Id.* at ¶¶ 11, 12. Jackson appeared before a magistrate judge, who allegedly threatened him with a rope, and Jackson was placed in a cell with a "long wire cord hanging from the ceiling, and a metal rod." *Id.* at 2, ¶¶ 17, 19. Jackson's family was notified that he was released, but when his family arrived to pick him up, they were told he could not be released because he was having a mental crisis. *Id.* at ¶¶ 20-24.

That evening, City of Caldwell Police Officer Baucom and another officer moved Jackson from one cell to another. *Id.* at ¶ 25. At the new cell, while Jackson was still handcuffed and shackled at his ankles, Officer Baucom picked him up and shoved him, causing Jackson's body to strike a metal bead and his head to strike a cement wall and then a metal toilet. *Id.* at ¶¶ 27-28. Officer Baucom claimed that Jackson fell, but Jackson accused Officer Baucom of throwing him. *Id.* at ¶ 29. Thirty minutes later, Jackson signed a Magistrate Admonishment agreeing to time served, however he was not immediately released. *Id.* at ¶¶ 30-31. Later that day, Jackson was "walking and talking and appear[ed] to be in good outward physical condition." *Id.* at ¶ 40. Jackson was not medically treated at the jail, nor did he see medical personnel, but he had bruises and what appeared to be taser marks on his body after the incident with Officer Baucom. *Id.* at ¶¶ 41, 44.

At some point Jackson was taken to Cross Creek Hospital, a psychiatric hospital in Austin. *Id.* at ¶ 46. A video allegedly depicts him as non-violent, *id.* at ¶ 47, but it is unclear when and where the video was made. At Cross Creek Hospital, Jackson demanded to be released. *Id.* at ¶ 50. According to a 911 call,[3] he was given a sedative cocktail and placed in a "personal hold" for five minutes, after which Jackson was unconscious with shallow respirations,

---

[3] The pleadings do not explain why, when, or by whom the 911 call was made.

faint pulse, lying supine, and in cardiac arrest.  *Id.* at ¶¶ 51-54.  At some point, Jackson was taken to St. David's Hospital and placed on life support.  *Id.* at ¶ 58.

A later investigation by the Texas Rangers determined that the magistrate judge "had made comments relating to having a rope for guys that act like [Jackson]" and that Officer Baucom had engaged in conduct that amounted to felony assault.  *Id.* at ¶¶ 61-63.  Officer Baucom was placed on administrative leave and later charged with official oppression, to which he pleaded guilty and was sentenced to one-year of probation.  *Id.* at ¶¶ 64-66.

Jackson was later charged with felony assault of a public servant for allegedly biting an officer who stood by and did not intervene during Officer Baucom's use of excessive force.  *Id.* at ¶¶ 67-70.  It is unclear from the pleadings when exactly this biting incident occurred or when this charge was brought, though it is implied that it was brought after Jackson was in the hospital.

Jackson's parents, as his next friends, bring this suit on Jackson's behalf.[4] As of the filing of the First Amended Complaint, Jackson was "stable, improving condition, and out of ICU." *Id.* at ¶ 73.  As it was unclear from the First Amended Complaint whether Plaintiffs were properly bring claims on Jackson's behalf under Federal Rule of Civil Procedure 17, the undersigned ordered Plaintiffs to file "a Supplement to their First Amended Complaint *limited to* specifically describing Chester Jackson, Jr.'s competency and capacity to sue and whether he has a duly appointed representative." Dkt. #39 (emphasis added).  Rather than comply with the court's order to file a Supplement to the First Amended Complaint, Plaintiffs filed a Second Amended Complaint "limited to adding facts related to the mental capacity of Chester Jackson

---

[4] Accordingly, the undersigned refers to Jackson's next friends as "Plaintiffs" and Jackson as "Jackson"

Jr. to necessitate a next friend as an adult plaintiff."[5] Dkt. #42. Plaintiffs allege Jackson "suffered severe brain damage as a result of the hold and deprivation of oxygen to his brain" and "remains in a minimally conscious state ("MCS"), non-verbal, and confined to a bed, in an assisted living facility since his release from the intensive care unit at St. Davis Hospital in June 2019." Dkt. #42 at 1-2. Accordingly, the undersigned is satisfied that Plaintiffs have standing to assert these claims as Jackson's next friends.

Plaintiffs assert claims against Burleson County Deputy Bennett, who arrested Jackson; Burleson County Sheriff Norsworthy, who is not alleged to have directly interacted with Jackson; Burleson County; City of Caldwell Officer Baucom, who allegedly used force against Jackson in the jail; and the City of Caldwell, which employed Officer Baucom. *Id.* at ¶¶ 2-6. However, as demonstrated by the parties' briefing, it is not entirely clear which claims are asserted against which defendant. Plaintiffs assert a claim for malicious prosecution based on Burleson County Deputy Bennett charging Jackson with public intoxication. *Id.* at ¶¶ 75-77. Plaintiffs assert a § 1983 fourth amendment illegal seizure claim based on Burleson County Deputy Bennett's initial arrest of Jackson and Jackson's continued detention after he had fully served the one-day sentence for the public intoxication offense. *Id.* at ¶¶ 78-83. Plaintiffs assert a § 1983 excessive force claim based on City of Caldwell Police Officer Baucom's assault on Jackson while he was being moved to a new cell. *Id.* at ¶¶ 84-88. Plaintiffs assert a § 1983 claim for failure to provide medical care and delay in providing medical care based on the failure to provide Jackson mental health care or medical care while he was in the Burleson County Jail. *Id.* at ¶¶ 89-92. Plaintiffs assert a negligent hiring claim against the City of Caldwell for its hiring of Officer Baucom. *Id.* at ¶¶ 93-96. Plaintiffs assert failure to train and failure to

---

[5] Plaintiffs did not assert any additional claims in their Second Amended Complaint, and in light of their statement that the Second Amended Complaint is limited to adding facts related to Jackson's capacity, the present motions and this Report and Recommendation therefore equally apply to the Second Amended Complaint.

supervise claims against the City of Caldwell with respect to Officer Baucom and a failure to train claim against Burleson County with respect to Deputy Bennett and Officer Baucom. *Id.* at ¶¶ 97-122. Finally, Plaintiffs assert Americans with Disabilities Act ("ADA") and Rehabilitation Act claims based on the actions by Deputy Bennett and Officer Baucom. *Id.* at ¶¶ 123-127.

However, Plaintiffs' claims and asserted facts raise several questions, not all of which are addressed in the parties' briefing. First, the finality of Jackson's public intoxication charge is unclear, and thus it is also unclear whether any claim based on that arrest is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Next, it is unclear what injuries Plaintiffs contend Jackson suffered from the alleged use of excessive force by Officer Baucom. They allege "[o]ne day later [Jackson] was in the Intensive Care Unit in an Austin hospital on life support," *id.* at ¶ 88, but they also allege the "personal hold" at Cross Creek Hospital left him unconscious with shallow respirations, faint pulse, non-responsive and caused complete cardiac arrest, *id.* at ¶¶ 53-54. As noted above, it is unclear in the timeline when Jackson allegedly bit an officer at the jail or what specifically prompted the transfer to Cross Creek Hospital. It is also unclear what harm Plaintiffs allege resulted from the magistrate judge's remarks about a rope and Jackson being placed in a cell with a wire hanging down from the ceiling.

The City of Caldwell and Burleson County separately moved to dismiss the claims against them. Those motions are now before the court.

## II.    APPLICABLE LAW

### A.    Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507

U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id*. at 570.  The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The standard is properly guided by "[t]wo working principles."  *Id*.  First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief.  If not, "the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Id*.  In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).

B.      **Municipal Liability**

In *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 solely because its employee committed a constitutional tort. *Id*. at 691. Put differently, a plaintiff cannot prevail on a theory of *respondeat superior*. *Id*. Thus, when a non-policy-making local governmental employee acts in a manner inconsistent with established governmental policy, the governmental employer cannot be held liable under Section 1983. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988); *McConney v. City of Houston*, 863 F.2d 1180, 1184 & n.2 (5th Cir. 1989).

Municipalities and other local governments may incur Section 1983 liability, however, where official policy or custom causes a constitutional violation. *Bennet v. City of Slidell,* 728 F.2d 762, 766 (5th Cir. 1984). For municipal liability to attach, the plaintiff must show three elements: (1) a policymaker; (2) an official policy; and (3) a "violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). Municipal policy for purposes of Section 1983 liability may consist of:

> 1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2.      A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Deep East Tex. Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

7

In order to prevail on a municipal liability claim, a plaintiff must show "(1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences." *Johnson*, 379 F.3d at 309. Deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Id.* Deliberate indifference is a stringent standard of fault, requiring more than negligence or even gross negligence. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *see also Johnson*, 379 F.3d at 309; *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). Deliberate indifference requires that the municipal actor disregarded a known or obvious consequence of his action. *Davis*, 406 F.3d at 381. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. *Id*.

When, as here, a plaintiff alleges a failure in hiring, training, or supervision, the plaintiff must show that: (1) the hiring, training, supervising procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring, training, supervising policy, and (3) the inadequate hiring, training, supervising policy directly caused the plaintiff's injury. *Baker*, 75 F.3d at 200; *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009); *Davis*, 406 F.3d at 381; *Brown v. Bryan County, Ok.*, 219 F.3d 450 (5th Cir. 2000); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992).

### III.   CITY OF CALDWELL'S MOTION

The City of Caldwell moves to dismiss each of the claims potentially asserted against it. Dkt. #16.   The City of Caldwell first claims it is entitled to governmental immunity as to Jackson's Texas tort claims.   *Id.* at 4-5.   Plaintiffs disclaim bringing their negligent hiring, training, and supervision claims under the Texas Tort Claims Act and instead contend they bring those claims under § 1983.[6]   Dkt. #23 at 7, 11-15.   The City of Caldwell also moves to dismiss any ADA or Rehabilitation Act claims asserted against it.   Dkt. #16 at 12-15.   Plaintiffs similarly disclaim asserting ADA or Rehabilitation Act claims against the City of Caldwell.   Dkt. #23 at 16.   The City of Caldwell moves to dismiss any claims for punitive damages and injunctive relief, Dkt. #16 at 15-17, to which Jackson did not respond, Dkt. #23.   Therefore, the City of Caldwell has shown it is entitled to dismissal of those claims.   *See* Local Rule CV-7(e)(2).   Accordingly, the court turns to the § 1983 claims asserted against the City of Caldwell for its hiring, training and supervision of Officer Baucom.   These are Plaintiffs' only remaining claims that are plausibly asserted against the City of Caldwell.

### A.   Hiring of Officer Baucom

Plaintiffs pleaded that before working for the Caldwell Police Department, Officer Baucom worked at the Washington County Sheriff's office first as a jailer and then as a patrol officer.   FAC at ¶ 74.   "He was disciplined on many occasions as a Washington County officer, due to his poor judgment and eventually terminated."   *Id.*   "The last discipline at Washington County was related to inappropriate conduct with a minor."   *Id.*   Plaintiffs allege the "City of Caldwell has a practice of hiring officers that have resigned due to questionable behavior at other

---

[6] Plaintiffs argue that they have asserted a tort claim against Officer Baucom for the injury caused to Jackson when Officer Baucom pushed him, causing his body to strike the metal bed and his head to strike the metal toilet. Dkt. #23 at 7.   The parties dispute whether such a claim can be brought under the Texas Tort Claims Act.   *See id.* at 7-8; Dkt. #27 at 3.   However, no such claim is asserted in the First Amended Complaint.   *See* Dkt. #13 at ¶¶ 84-88 (asserting an excessive force claim under § 1983).

agencies since they were never actually fired and resigned, as it did with Baucom." *Id.* Plaintiffs also allege the City of Caldwell "was negligent in hiring Baucom because he was allowed to engage in jobs above and beyond what his license allowed for as a peace officer." *Id.* at ¶ 94. Finally, Plaintiffs contend "Baucom had a long history of incompetence, poor judgment, and criminal activity implications prior to being hired as a Burleson County Jailer, and ultimately a Caldwell officer." *Id.* at ¶ 95. However, the only prior, specific disciplinary or misconduct instance identified in the First Amended Complaint "was related to inappropriate conduct with a minor." *See id.* at ¶ 74. In response to the City of Caldwell's motion, Plaintiffs direct the court to no other facts pleaded in the First Amended Complaint. Dkt. #23 at 11-12.

Notably, Plaintiffs pleaded no facts that Officer Baucom had a history of excessive force violations such that any excessive force he used against Jackson was an obvious consequence of any deficient hiring process by the City of Caldwell. *See Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 226 (5th Cir. May 15, 2020). Nor did Plaintiffs plead any pattern of hiring officers with excessive force violations such that Officer Baucom's use of force was an obviously likely outcome of the City of Caldwell's hiring policies. *Burge*, 336 F.3d at 370; *Covington*, 812 F. App'x at 226. In short, Plaintiffs pleaded only conclusory allegations—but no facts—that the City of Caldwell has a policy of inadequate hiring practices, that such a policy was the moving force of Jackson's injury, or that Jackson's injury was such an obvious consequence of the policy that the policy makers were deliberately indifferent in adopting the policy.

For these reasons, the undersigned will recommend this claim be dismissed.

### B.      Training of Officer Baucom

Plaintiffs summarily allege that Officer Baucom was inadequately trained as demonstrated by his use of excessive force and that he was allowed to freely roam the Burleson County Jail.  FAC at ¶¶ 96, 106-09; Dkt. #23 at 12-13.  "To avoid dismissal of a failure-to-train claim, a plaintiff must plead sufficient facts to show: '(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.'"  *Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383, at *6 (W.D. Tex. Mar. 31, 2020) (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010)).  In order for "liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow*, 614 F.3d at 170 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Similar to their inadequate hiring claim, Plaintiffs have pleaded no actual facts related to any training by the City of Caldwell or that the use of excessive force was the obvious consequence of any lack of training. Nor did Plaintiffs plead any previously similar incidents resulting from a lack of training such that the City of Caldwell adopted its training policies with deliberate indifference to the likelihood that excessive force would be used by its officers.

### C.      Supervision of Officer Baucom

Plaintiffs plead that Officer Baucom was able to determine his own work locations because he was inadequately supervised.  FAC at ¶ 115.  "He was documented to be in the Burleson County jail on several occasions although he did not have a purpose on being there within the jail beyond processing on the dates and time he was in jail."  *Id.* at ¶ 116.  Plaintiffs also contend Officer Baucom did not have the required licensure to work in the jail.  *Id.* at ¶ 117.

11

Plaintiffs contend that Officer Baucom's presence at the Burleson County Jail on other occasions demonstrates this was not a single instance of a lack of supervision.  Dkt. #23 at 14; FAC at ¶ 116.  However, Plaintiffs failed to plead any facts that demonstrate an officer's lack of supervision would obviously result in the use of excessive force.  Nor did Plaintiffs plead any facts that the City of Caldwell's policymakers were on notice of such a risk and adopted the supervision policy with deliberate indifference to the risk of excessive force.

### D.      Conclusion

Although Plaintiffs repeatedly recite the appropriate standard for § 1983 liability against a municipality, they nonetheless seek to hold the City of Caldwell liable under what is really *respondeat superior* liability.  Plaintiffs pleaded no facts that support the City of Caldwell was deliberately indifferent to the risk of excessive force.  Instead, Plaintiffs' theory of liability is that Jackson was injured by a City officer, therefore the officer must have been improperly hired, trained, and supervised; but that theory of liability is prohibited under *Monell*. Accordingly, Plaintiffs have failed to plead a viable claim against the City of Caldwell, and the undersigned will recommend the City of Caldwell's motion be granted and Plaintiffs' claims against the City of Caldwell be dismissed with prejudice.

### IV.     BURLESON COUNTY'S MOTION

Burleson County moves to dismiss all the claims asserted against it as well as claims for punitive and exemplary damages. Burleson County contends Plaintiffs' state law claims of malicious prosecution, negligent hiring, and failure to train and supervise cannot be brought against it. Plaintiffs disclaim asserting any state law claims against Burleson County and contends they bring their failure to train and supervise claims under § 1983. Plaintiffs do not respond to Burleson County's motion with respect to any malicious prosecution or negligent

hiring claims. Plaintiffs also do not dispute Burleson County's entitlement to dismissal of punitive and exemplary damages claims. The undersigned will therefore address the remaining claims challenged by Burleson County, which are brought under § 1983, the ADA, and the Rehabilitation Act.

### A.      Illegal Seizure[7]

As described above, it is not clear to the undersigned that Plaintiffs assert an illegal seizure claim against Burleson County. *See* FAC at ¶¶ 78-83. Nonetheless, both parties proceed as if this claim is asserted against Burleson County. Plaintiffs assert Jackson was unconstitutionally arrested and illegally held after his arrest and that he continued to be detained after he served his sentence. *Id.*

Burleson County argues Plaintiffs failed to allege an unconstitutional policy that was the moving force of the violations. Dkt. #20 at 8. Plaintiffs direct the court to paragraphs 20-24 of the First Amended Complaint and argue "[t]he Burleson County Sheriff Office maintained a policy of keeping inmates who were going through a mental health crisis in custody so as to protect them from themselves and or the public." Dkt. #28 at 11 (citing FAC at ¶¶ 20-24, 30-31). However, these paragraphs merely describe that Jackson "was suddenly not eligible for release any longer since he was having a mental crisis." *See* FAC at ¶ 21. They do not provide any facts that describe an official policy or any persistent, widespread practice or custom of the Burleson County Sheriff Office. *See* FAC at ¶¶ 20-24, 30-31. Accordingly, Plaintiffs have failed to plead a viable illegal seizure claim against Burleson County.

---

[7] As noted earlier, the finality of Jackson's public intoxication charge is not clear from the pleadings. Thus, it is unclear whether any claims based on the initial arrest are barred by *Heck*.

### B.      Excessive Force

As described above, it is not clear to the undersigned that Plaintiffs assert an excessive force claim against Burleson County.  *See* FAC at ¶¶ 84-88.  Nonetheless, both parties proceed as if this claim is asserted against Burleson County.

Burleson County argues there is no allegation of any specific Burleson County policy or informal custom that directly caused the use of excessive force.  Dkt. #20 at 8.  Plaintiffs argue it was customary and common practice to allow individuals not assigned to the jail to work in the jail.  Dkt. #28 at 12 (citing FAC at ¶ 32).   Plaintiffs also argue Jackson was in the care of Burleson County and County employees in the jail sought Officer Baucom's help to move him from one cell to another.  *Id.* (citing FAC at ¶¶ 32, 85-86).

Plaintiffs have failed to sufficiently plead a municipal policy that lead to Jackson's constitutional injury.  Although not cited in their response, Plaintiffs did plead that Officer Baucom was in the Burleson County jail on several occasions without a specific purpose. *See* FAC at ¶ 116. But this allegation is not specific enough to support a formal or informal municipal policy.   Nor did Plaintiffs plead facts that support this policy was adopted or maintained with deliberate indifference to the likelihood that it would lead to excessive force violations.  Accordingly, Plaintiffs have failed to plead a viable excessive force claim against Burleson County.

### C.      Failure to Train

Similarly, in conjunction with its arguments regarding Jackson's illegal seizure and excessive force claims, Burleson County also argues Plaintiffs failed to plead any pattern of violations or conduct preceding the interaction with Jackson that would have put Burleson

County on notice of a need for more or different training or supervision with respect to illegal seizure or use of force. Dkt. #20 at 8.

In support of their claim that Burleson County's failure to adequately train officers led to Jackson's constitutional violations, Plaintiffs argue Burleson County failed to train Deputy Bennett in proper identification of drug use, Deputy Bennet received no mental health training, and Deputy Bennett arrested Jackson "and set in motion the events that have led to the violation of Chester Jackson's constitutional and civil rights." Dkt. #28 at 13-14 (citing FAC at ¶¶ 11, 99). However, Plaintiffs did not plead any facts to support their claim that any training deficiencies were a policy decision by Burleson County or any facts that would have put Burleson County on notice that its training was inadequate and likely to lead to a constitutional violation. Accordingly, Plaintiffs have failed to plead facts to support their failure to train claim against Burleson County.

### D.      Failure to Provide Medical Attention

Government officials have a duty under the Eighth and Fourteenth Amendments to provide post and pre-trial detainees with basic human needs, including providing a certain level of medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). They violate this duty only when they are deliberately indifferent to serious medical needs. *Id.*; *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)(en banc).

Burleson County argues that Plaintiffs failed to plead any policy of failure to provide medical attention and failed to plead any facts that would show officials knew of his medical needs and were deliberately indifferent or that any delay in treatment caused harm. Dkt. #20 at 9-11; Dkt. #30 at 5-6. Plaintiffs argue deliberate indifference is alleged if a plaintiff alleges "jail officials ignored his complaints, intentionally treated him incorrectly, or engaged in similar

conduct that would clearly evince a wanton disregard for any serious medical needs." Dkt. #28 at 9 (citing *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).[8]  Without citing to the First Amended Complaint, Plaintiffs argue they "have sufficiently pleaded that Burleson County has maintained a custom or practice of providing inadequate medical care by delaying and denying medical care to inmates." *Id.* at 10. They contend Jackson entered Burleson County jail after allegedly ingesting PCP but was actually suffering from a mental crisis, of which they informed the arresting officer, but he was not treated by any medical personnel at the jail.[9]  *Id.*

Plaintiffs did plead that the arresting officer was informed that Jackson was in a mental crisis and that Jackson did not receive medical treatment at the jail. FAC at ¶¶ 11, 21, 90-92.  But Plaintiffs pleaded no facts that would show *a policy* of denying or delaying medical treatment. Nor did Plaintiffs plead any facts regarding any specific medical needs—other than "mental crisis"—that required medical attention or any harm that was caused from any delay in treatment.  Accordingly, Plaintiffs failed to plead a viable claim for relief against Burleson County.

## E.    ADA and Rehabilitation Act Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Leeper v. Travis Cty., Tex.*, No. 1:16-CV-819-RP, 2018 WL 5892377, at *8 (W.D. Tex. Nov. 9, 2018) (quoting 42 U.S.C. § 12132).  Title II of the ADA extends Section 504 of the

---

[8] Notably, these cases involved suits against correction officers or doctors, not municipalities.  *See Rogers*, 709 F.3d at 405; *Gobert*, 463 F.3d at 343.

[9]  Notably, Plaintiffs make no arguments in their response regarding the lack of medical care to treat any injuries from Officer Baucom's alleged assault.  *See* FAC at ¶ 92 ("Burleson County Jail staff continued to refuse to offer him any medical treatment for any injuries that may have occurred as a result of the assault by the officer.").

Rehabilitation Act such that it applies to all public entities while simultaneously weakening its causation requirement. *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020).  The close relationship between Section 504 of the Rehabilitation Act and Title II of the ADA means that precedents interpreting either law generally apply to both.  *Id.*

"To make out a prima facie case under Title II, a plaintiff must show (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Id.* (quoting *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (cleaned up)).  In addition to prohibiting discrimination, the ADA and the Rehabilitation Act also impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.  *Smith*, 956 F.3d at 317.  "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Id.* at 317–18 (5th Cir. 2020) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

Neither a policymaker nor an official policy need be identified for ADA claims; a public entity "is liable for the vicarious acts of any of its employees as specifically provided by the ADA." *Leeper*, 2018 WL 5892377, at *8 (quoting *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002)). A plaintiff has the burden to "specifically identify the disability and resulting limitations . . .  and to request an accommodation in direct and specific terms." *Id.* (quoting *Windham*, 875 F.3d at 237 (cleaned up)); *see Smith*, 956 F.3d at 317. "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the

disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (quoting *Windham*, 875 F.3d at 237 (cleaned up)); *see Smith*, 956 F.3d at 317. To recover compensatory damages for discrimination under Title II, a plaintiff "must also show that the discrimination was intentional." *Id.* (quoting *Windham*, 875 F.3d at 235 n.5 (cleaned up)).

In asserting these claims, Plaintiffs allege:

123. Each of the preceding paragraphs is herein incorporated as if restated fully.
124. Chester was arrested due to Burleson County Deputy John Bennett's misperception of the effects of his mental illness as criminal activity, namely public intoxication.
125. In addition, they failed to reasonably accommodate Chester's disability in the course of investigation or arrest, causing him to suffer greater injury due to the belief that he had to defend himself, resulting in him being indicted for a felony based on his alleged actions.
126. Chester was tossed while handcuffed by Defendant Baucom after being arrested at his home by Defendant Bennett.
127. His parents told Defendant Bennett that Chester was in need of mental help but Bennett refused to believe Chester was mentally ill. John. K. Bennett arrested Chester and charged him with public intoxication. He chose to ignore Chester's mother's statements and her requests for treatment for her son.

FAC at ¶¶ 123-127. Burleson County argues that Plaintiffs failed to plead that Jackson was a qualified person with a disability, that he suffered a deprivation or discrimination as a result of the alleged condition, or that Burleson County intentionally caused the deprivation because of the alleged disability. Dkt. #20 at 15.

Plaintiffs argue Jackson's "disability was known to all involved in his arrest, detention, and transportation" because his family members made it clear to the arresting officer and the jailers that he was suffering from mental illness and required medical attention, yet Defendants failed to accommodate Jackson's known mental illness. Dkt. #28 at 15-16. Plaintiffs contend Burleson County violated the ADA and the Rehabilitation Act because Deputy Bennett arrested Jackson due to his disability and failed to reasonably accommodate his disability in the course of

the investigation or arrest.[10] Accordingly, the undersigned understands Plaintiffs' ADA and Rehabilitation claims to be that Deputy Bennett wrongly arrested Jackson because he mistook Jackson's disability for criminal activity, that Deputy Bennett failed to accommodate Jackson's disability in the course of the investigation or arrest, and that the wrongful arrest eventually led to the use of force against Jackson by Office Baucom, but Plaintiffs are not asserting that Jackson's post-arrest detention constituted violations of the ADA or Rehabilitation Act.[11]

Plaintiffs pleaded that "[Jackson] was having a mental crisis that his family recognized, so they contacted 911 to get him some help and transferred [] to a mental health facility in Houston, Texas" and "[Jackson's] family made the Burleson [C]ounty's sheriff office aware through [D]eputy Bennett that [Jackson] was having a mental crisis."   FAC at 2, ¶¶ 9, 11. Although the pleaded facts supporting this claim are wanting—Plaintiffs failed to plead any description of Jackson's "mental crisis" or what specifically was communicated to Deputy Bennett—Plaintiffs did sufficiently plead that Deputy Bennett was on notice that Jackson's behavior was not criminal nature but related to a disability and Deputy Bennett nonetheless mistook his disability for criminality.   Accordingly, the undersigned will recommend that Burleson County's motion be denied as to this claim.

---

[10] Notably, Plaintiffs rely entirely upon non-Fifth Circuit authority in arguing these actions violate the ADA and Rehabilitation Act.  Dkt. #28 at 16 (citing *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), rev'd in part *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015); *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999); *Lewis v. Truitt*, 960 F. Supp. 175, 178 (S.D. Ind. 1997); *Jackson v. Inhabitants of Town of Sanford*, No. CIV. 94-12-P-H, 1994 WL 589617, at 6 (D. Me. Sept. 23, 1994)).  *But see Windham v. Harris Cty., Texas*, 875 F.3d 229, 235–36, n.7 (5th Cir. 2017) ("We have also recognized Title II claims in the specific context of police officers who fail reasonably to accommodate the known limitations of disabled persons they detain.") (citing *Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 174 (4th Cir. 2009) ("In the context of arrests, courts have recognized two types of Title II claims: (1) wrongful arrest, where police arrest a suspect based on his disability, not for any criminal activity; and (2) reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees.")).

[11] Relatedly, Plaintiffs do not address Burleson County's argument that these claims cannot proceed to the extent they are merely restatements of the claim for inadequate or delayed medical treatment.

### F.        Conditions of Confinement

In their responsive brief, Plaintiffs argue they "plead[ed] facts to support a conditions of confinement claim as well, although not titled." Dkt. #28 at 20.  They contend the Federal Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief" and do not "countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted." *Id.* (citing FED. R. CIV. P. 8(a)(2); *Johnson v. City of Shelby*, 574 U.S. 10 (2014)). *Johnson* reversed a dismissal where plaintiffs had failed to expressly state they were bringing their claims under § 1983. *Johnson*, 574 U.S. at 10.

This claim was not pleaded in the First Amended Complaint.  Nor do Plaintiffs properly seek leave to assert this claim.  *See* FED. CIV. P. 15, 16. Plaintiffs contend they adequately pleaded the claim, although they did not explicitly assert the claim in the First Amended Complaint. Dkt. #28 at 21-24.  Burleson County argues that even if the court accepts Plaintiffs' attempt to assert the claim now, they failed to adequately plead the claim.

Plaintiffs contend a conditions of confinement claim has three elements: (1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of a detainee's constitutional rights. Dkt. #28 at 21. Plaintiffs contend the facts they pleaded support a conditions of confinement claim. Dkt. #28 at 21-24.  Specifically, Jackson was illegally held in custody without a mental health warrant or valid reason not to release him. *Id.* (citing FAC at ¶¶ 9, 31). Officer Baucom was unsupervised in the jail and able to assault Jackson.  *Id.* (citing FAC at ¶ 33).  There was no legitimate purpose to move Jackson from cell to cell or to restrain him with leg irons and then assault him.  *Id.* (citing FAC at ¶¶ 25-33, 106, 121).  Plaintiffs contend

20

the magistrate judge before whom Jackson appeared threatened him with a rope, Jackson was moved to a cell with a long wire cord hanging from the ceiling and a metal rod. *Id.* (citing FAC at 17-19).

Burleson County does not dispute the claim elements as articulated by Plaintiffs. Dkt. #30 at 7 (citing *Hare*, 74 F.3d at 653). Instead, Burleson County argues Plaintiffs fail to identify any officially mandated policy issued by the County Sheriff related to conditions of confinement or identify any persistent and widespread confinement conditions that could constitute a policy. Burleson County further argues Plaintiffs failed to plead any facts to support deliberate indifference by a Burleson County policymaker.

The undersigned agrees. Plaintiffs have not stated facts that support a conditions of confinement claim against Burleson County. Plaintiffs' claim, put simply, is that Jackson's rights were violated, therefore his conditions of confinement were unconstitutional. Plaintiffs pleaded no facts that suggest a Burleson County policy created these conditions, nor have they pleaded any facts that suggest a Burleson County policymaker was deliberately indifferent to the constitutional violations that were likely to arise from any such policy. Finally, it is not clear to the undersigned what constitutional violations Plaintiffs contend resulted from specific conditions of confinement. For instance, it is unclear how being held without a mental health warrant constitutes a "condition" of confinement or how being moved from one cell to another is a "condition" of confinement. While being held in a cell with long wire cord hanging from the ceiling may constitute an unreasonable condition of confinement for some detainees, namely those who are suicidal, Plaintiffs did not plead that Jackson was suicidal or suffered any injury

from the wire cord or metal rod.  Plaintiffs have failed to plead facts that would support a viable conditions of confinement claim.[12]

### G.    Conclusion

Although Plaintiffs repeatedly recite the appropriate standard for § 1983 liability against a municipality, as they did with the City of Caldwell, they nonetheless seek to hold Burleson County liable under what is really *respondeat superior* liability.  Plaintiffs pleaded no facts that support any Burleson County policy led to Jackson's constitutional violations, or that such policy was adopted with deliberate indifference to the risk of constitutional violations, or even that such a policy existed. Instead, Plaintiffs' theory of liability is that Jackson's rights were violated, therefore Burleson County must have done something wrong.  This is precisely what *Monell* prohibits. Accordingly, Plaintiffs have pleaded no viable section 1983 claim against Burleson County, and the undersigned will recommend Burleson County's motion be granted with respect to Plaintiffs' section 1983 claims and those claims be dismissed with prejudice.

Unlike their section 1983 claims, Plaintiffs' ADA and Rehabilitation Act claims do not depend on a municipal policy.  Accordingly, although the undersigned is skeptical of those claims given how poorly they are pleaded, the undersigned will nonetheless recommend Burleson County's motion be denied as to those claims.

### V.    RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS** Defendant City of Caldwell's Renewed Motion to Dismiss for Failure to State a Claim (Dkt. #16) be **GRANTED** and all claims against the City of Caldwell be **DISMISSED WITH PREJUDICE**.

---

[12] It appears Plaintiffs read *Hare* in preparing their responsive brief and are now trying to find pleaded facts that could support a claim identified in *Hare*, regardless of applicability.

For the reasons stated above, the court **RECOMMENDS** Defendant Burleson County's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #20) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned **RECOMMENDS** the motion be **DENIED** as to Plaintiffs' ADA and Rehabilitation Act claims and **GRANTED** as to all remaining claims against Burleson County. The undersigned further recommends that all claims against Burleson County, except Plaintiffs' ADA and Rehabilitation Act claims, be **DISMISSED WITH PREJUDICE**.

## VI.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED January 25, 2021.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE

23