IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

EDDIE LEE WILSON and                     §
CHESTER JACKSON, SR.,                     §
                                          §
          Plaintiffs,                     §
                                          §
v.                                        §        1:20-CV-311-RP
                                          §
ROBERT RILEY BAUCOM,                      §
DEPUTY JOHN K. BENNETT,                   §
SHERIFF THOMAS NORSWORTHY, and            §
CITY OF CALDWELL,                         §
                                          §
          Defendants.                     §

## ORDER

Before the Court is Plaintiffs Eddie Lee Wilson and Chester Jackson, Sr. ("Plaintiffs"), as next friends to Chester Jackson, Jr., Rule 59 Motion for New Trial After Summary Judgment and After Jury Trial, (Dkt. 138), Defendant City of Caldwell's ("Caldwell") Response to Plaintiffs' Motion for New Trial and for Reconsideration, (Dkt. 139), Burleson County and Deputy John K. Bennett's ("Bennett") Response to Plaintiffs' Rule 59 Motion for New Trial after Summery Judgment and After Jury Trial, (Dkt. 143), and Defendant Robert Riley Baucom's ("Baucom") Response in Opposition to Plaintiffs' Motion for New Trial, (Dkt. 144). After considering the parties' arguments, the facts in the record, and the relevant law, the Court denies Plaintiffs' motion.

## I. BACKGROUND

This case is about the aftermath of Chester Jackson's ("Jackson") arrest by Burleson County Deputy Sergeant Bennett. Jackson was arrested after his family called 911 because he was having a mental crisis. While Jackson was being held in the Burleson County Jail, he was moved between two cells by Baucom, who was a Caldwell police officer, and another officer. Baucom "picked him up and shoved him, causing Jackson's body to strike a metal be[]d and his head to strike a cement wall

and then a metal toilet." (R. & R., Dkt. 44, at 2). Jackson accused Officer Baucom of throwing him

but later that day was "walking and talking and appear[ed] to be in good outward physical

condition." (*Id.*). At some later point, Jackson was taken to Cross Creek Hospital, a psychiatric

hospital, where he was given sedatives and placed in a "personal hold" for five minutes, after which

he was unconscious and in cardiac arrest. Jackson was taken to St. David's Hospital and placed on

life support. Jackson remains in a minimally conscious state. (*See* Am. Joint Stipulation of Facts, Dkt.

113).

Plaintiffs, who are Jackson's parents, filed this suit against Baucom, Caldwell, Burleson

County, and Bennett, and the case was removed to this Court on March 23, 2020. (Dkt. 1). Caldwell

and Burleson County filed motions to dismiss, and the Court granted Caldwell's motion to dismiss

and granted in part and denied in part Burleson County's motion to dismiss. (Dkt. 51). The Court

also allowed Plaintiffs to amend two aspects of their complaint. (*Id.*). Plaintiffs filed an amended

complaint against all defendants. (Dkt. 53). In response, Caldwell filed another motion to dismiss

and motion for summary judgment, and Burleson County and Bennett filed a motion for summary

judgment. (Dkts. 58, 60). The Court granted Caldwell's motion to dismiss, (Dkt. 99), and granted

Burleson County and Bennett's motion for summary judgment, (Dkt. 108).

Following those rulings, Plaintiffs had one remaining claim that was to be tried to a jury: that

Baucom was liable for using excessive force against Jackson pursuant to 42 U.S.C. § 1983. Just

before the final pretrial conference, Plaintiffs' counsel stipulated that Baucom did not cause the

anoxic brain injury that resulted in Jackson's currently minimally conscious state. (Am. Joint

Stipulation of Facts, Dkt. 113). At the final pretrial conference, the Court determined that each party

would have five hours respectively to put on their case. (*See* Minute Entry, Dkt. 112).

The jury trial began on October 12, 2021. (Minute Entry, Dkt. 119). After three days of

testimony and evidence, the jury was charged and reached a verdict. (Dkts. 126, 131). The jury found

that Plaintiffs failed to prove, by a preponderance of the evidence, that Baucom used excessive force against Jackson. (Dkt. 131). The Court entered final judgment, (Dkt. 136), and Plaintiffs filed the instant motion seeking a new trial and reconsideration.

## II.  LEGAL STANDARD

### A. Motion for New Trial

"A district court can grant a motion for new trial [under Federal Rule of Civil Procedure Rule 59(a)] if the first trial was unfair or if the jury verdict was against the great weight of the evidence." *Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996). Rule 59 allows the Court to grant a new trial "on all or some of the issues" presented in the initial trial. But "even when only one issue is tainted by error or prejudice, a new trial must nevertheless be granted on all issues 'unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Eximco, Inc. v. Trane Co.*, 748 F.2d 287, 290 (5th Cir. 1984) (quoting *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)).

The Fifth Circuit has identified three factors that support granting a new trial: "the simplicity of the issues, 'pernicious occurrences' at trial, and the extent to which the evidence is in dispute." *Id.* (quoting *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989)). This test is disjunctive; only one factor must weigh in favor of granting a new trial, and even if none do, a new trial may be justified when other indicia demonstrate that the jury verdict was incorrect. *Id.* at 460–61. This standard requires the jury's verdict to be "against the great—not merely the greater—weight of the evidence." *Scott*, 868 F.2d at 789 (quoting *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th Cir. 1980)). "[M]ere conflicting evidence or evidence that would support a different conclusion by the jury cannot serve as the grounds for granting a new trial." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

**B. Motion for Reconsideration**

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). A motion made under Rule 59(e)—that is, one requesting a new trial or for the court to alter or amend its judgment—"is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Instead, it serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Courts must consider the tension between "the need to bring litigation to an end" and "the need to render just decisions on the basis of all the facts." *Id.* The Fifth Circuit has cautioned that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.*

### III.  ANALYSIS

**A. Motion for New Trial**

Plaintiffs request a new trial based on seven points of error: (1) denial of objection to jury panel; (2) denial of evidence related to Baucom's reputation; (3) admission of Jackson's biting and fighting officers after the incident; (4) denial of evidence of Baucom's conviction for his actions against Jackson; (5) admonishing counsel regarding the "golden rule;" (6) arbitrary time constraints; and (7) verdict against the weight of the evidence. (Dkt. 138). The Court steps through each point of error in turn.

**1. Objection Regarding Jury Panel**

During jury selection, Plaintiffs moved to strike the panel on the basis that there were no Black venire members. The Court denied the motion. In their motion for a new trial, Plaintiffs state that "not a single one of the 38 jurors were Black" and that "Plaintiffs and Counsel for plaintiff are

African American." (Dkt. 138, at 2). Plaintiffs describe their motion during trial as challenging "the systematic exclusion of Black jurors on the panel." (*Id.*). Plaintiffs also state that "African Americans in regions served by the Western District of Austin make-up about 10% percent[] of the population." (*Id.*). Plaintiffs cite no authority to support their ground for new trial. Plaintiffs cite to no basis showing that the venire panel selection process did not conform with the law. To the extent Plaintiffs attempt to challenge the venire panel selection process pursuant to the Jury Selection and Service Act, 28 U.S.C. §§ 1861–78, Plaintiffs did not submit the required sworn statement of facts required by Section 1867(d). For the reasons stated when this Court denied Plaintiffs' motion to strike the venire panel and because Plaintiffs lack both a factual basis and legal support for their argument, the Court finds that Plaintiffs have not demonstrated error warranting a new trial.

### 2. Character Evidence

Plaintiffs contend the Court erred by denying their attempt to introduce evidence that Plaintiffs believe would have controverted Baucom's "character" evidence. (Dkt. 138, at 2). According to Plaintiffs, Baucom opened the door to evidence against his character "when he held himself out to the jury as a person with much experience and someone that the new and training deputies could look up to in the sense of a role model." (Dkt. 138, at 2). Plaintiffs further characterize the testimony—although it is not clear whose testimony—as "introducing evidence of defendant's honesty and generosity." (*Id.*). Plaintiffs do not cite to the record.

The Federal Rules of Evidence generally disallow character evidence. Fed. R. Evid. 404 ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). Under Federal Rule of Evidence 404(a)(2), there are exceptions to the general prohibition on character evidence that apply only in criminal cases. Plaintiffs may believe that those exceptions apply in this case because they cite to one case in support of their argument: *United States v. Bonner*, 302 F.3d 776 (5th Cir. 2002).

*Bonner* was a criminal case, and its analysis is not applicable here. Because this is a civil case, the Court did not err in excluding character evidence under Federal Rule of Evidence 404.

### 3. Admission of Jackson's Conduct After Baucom's Use of Force

Plaintiffs devote one sentence to this point of error: "At the time the prejudicial evidence of Chester Jackson alleged post-use force conduct—in particular, his biting an officer and fighting officers Plaintiffs did not open door to place his conduct and character at issue and unfairly prejudiced the Plaintiffs since jury likely construed his conduct as character evidence in violation of Fed. R. Evid. 404(b)." (Dkt. 138, at 3). Plaintiffs then cite to a Ninth Circuit case. The Court struggles to understand Plaintiffs' argument but interprets it as contending that the Court erred by allowing Deputy Elswood, a non-party who was working as a jailer at the time of the incident, to testify that Jackson bit another jailer after Baucom's use of force as it allowed prejudicial character evidence into the record.

The Court did not err by allowing Elswood's testimony. First, Elswood's testimony about the bite was not introduced to impugn Jackson's character. Elswood testified about what occurred after Baucom's use of force to "discredit[] Plaintiffs' allegations that any physical injuries to Jackson had to have been caused by Baucom" given that Elswood himself "wrestled Jackson to the ground" after the bite. (Resp., Dkt. 144, at 14). Second, even if were error, Plaintiffs have not met their burden of showing that any such error was prejudicial. Having failed to meet their burden of showing any error, much less prejudicial error, relating to Elswood's testimony, the Court will deny Plaintiffs' request for a new trial on this issue.

### 4. Denial of Evidence Regarding Baucom's Criminal or Disciplinary Record

The Court need not address the fourth point—denial of evidence of Baucom's conviction for his actions against Jackson and his "Texas Ranger Report Public Record containing statement by Baucom"—because Plaintiffs included only a heading with no text or argument. Even if Plaintiffs

had presented it as an argument in their motion, the Court would have found that it was not error

and, if it was error, it was not error rising to the level of requiring a new trial. (*Id.* at 3).

### 5. Instruction Regarding the Golden Rule

Plaintiffs next argue the Court erred by admonishing Plaintiffs' counsel during closing

argument for violating the "golden rule." A golden rule argument asks the jurors to stand in the

shoes of a party. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 180 (5th Cir. 2005). "A plea to

the jury members to 'put themselves in the shoes of the plaintiff and do unto him as they would

have done unto them under similar circumstances is improper because it encourages the jury to

depart from neutrality and to decide the case on the basis of personal interest and bias rather than

the evidence.'" *Id.* (quoting *Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978) (cleaned up)).

During Plaintiffs' closing argument, Plaintiffs maintain that their counsel argued: "[S]ome of

us watch these video and think why does this keep happening? And some of us watch these videos

and think I'm glad it didn't happen to me, my son, husband, brother." (Dkt. 138, at 4). Once again,

Plaintiffs provide no citations to the record. During the course of Plaintiffs' closing, Baucom twice

objected that counsel was impermissibly asking the jury to place itself in the position of Plaintiffs.

(Resp., Dkt. 144). The Court admonished Plaintiffs' counsel to stop invoking the golden rule.

Plaintiffs now claim their use of the golden rule was permissible because a golden rule

argument is only improper as it relates to damages. Plaintiffs are correct that the golden rule is "not

improper when urged on the issue of ultimate liability." *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th

Cir. 1983). However, in this case, Plaintiffs' golden rule argument that the jury should be "glad" their

family member was not subjected to a use of force assumes that Baucom's use of force violated the

law—putting the jury's focus on damages rather than liability—and represents the kind of emotional

appeal the golden rule is designed to prevent. "Such arguments encourage the jury to 'decide the

case on the basis of personal interest and bias rather than on the evidence.'" *Whitehead v. Food Max of*

*Mississippi, Inc.*, 163 F.3d 265, 278 (5th Cir. 1998) (quoting *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 496 (5th Cir. 1982)). Plaintiffs impermissibly invited the jury to put themselves in the place of the Plaintiffs when deciding damages. Because a judge may "by appropriate instruction, salve the suit" after a party invokes the golden rule, the Court did not err, and Plaintiffs are not entitled to a new trial.

### 6. Time Limitations

In their penultimate point, Plaintiffs argue that the Court "placed arbitrary restraints on the length of time to allow plaintiff to meet the burden of proof in this case." (Dkt. 138, at 5). Plaintiffs state they were given five hours and forty minutes, "less time [than] for an everyday soft tissue auto collision trial." (*Id.*). At the final pretrial conference, the Court explained how it allocates time during trial:

> Next, in reviewing your pretrial submissions, I have made what I believe is a determination of reasonable time limits to be in this trial. . . . I will tell you what my practice is in that regard. I will give you my good-faith estimate of what I believe you should take in putting on your case and defending your case and expressed in a number of hours. But don't worry about that because if upon expiration of the allotted time, you turn to me and say, Judge, I have two more witnesses, or whatever it is, I wasn't able to get everything in. If you have made judicious use of your and my and the jury's time, and you've been efficient and not repetitive and haven't had audiovisual problems or undue delay because of witnesses and things like that, then I will certainly give you more time. . . . I just want you to have incentives to be efficient with the jury's time. In this case, I'm going to allocate to each of you five hours per side. That will be inclusive of cross-examination but exclusive of a 15-minute opening statement and 20-minute closing statement in this case.

(*See* Minute Entry, Dkt. 112). Plaintiffs did not object or express any concerns about the allotted trial time.

During the trial, Plaintiffs played over 45 minutes of video, much of which showed nothing more than Bennett driving Jackson to the jail, and had "technical difficulties" presenting the video evidence. (Dkt. 138, at 6). Plaintiffs also admit in a footnote that because of the technical difficulties, they were "forced to employ stall tactics to keep the jury engaged, with questions out of sequence,

until all that was left was uncomfortable frustrating silence." (*Id.*). Plaintiffs seem to blame their

"technical frustrations" on court staff and the process for queuing a video to be presented in the

courtroom. (*Id.*). The Court regularly holds hearings and trials, and litigants have presented their

evidence with relative ease. And, as with every case, counsel here were invited to visit the courtroom

before their trial to test out equipment and work with the courtroom deputy to review logistics and

technology.

After Plaintiffs failed to use the Court's and the jury's time judiciously and used up their five-

hour allotment, Plaintiffs requested more time. In response, the Court observed that the case

involved "a very important issue" that was being given "very serious attention that [it] deserve[s]"

and reminded Plaintiffs that they had been warned the day before about wasting time. During a

sidebar, the Court provided detailed reasoning for its decision to grant Plaintiffs' request but only

allow a limited amount of additional time:

> I thought you understood this yesterday, but you're forcing me to make a record.
> The record will reflect certain things. The record will reflect that your manner of
> questioning is that you have the witness -- the witness answers your question, then
> you repeat almost every response, you repeat it and you confirm it with the witness
> taking up roughly twice the amount of time that you would normally take. You asked
> questions that didn't have any conceivable relation to this, and I wrote down a
> number of them if you'd like me to go down and talk about the areas that were
> irrelevant that took up your own time. . . . And finally, I understood why, because
> you admitted it at the bench at one time when I was questioning the relevance, you
> said, well, we're having trouble with our technology and you see what I'm doing, in
> other words, you're taking up time, you're stalling, and we sat here for minutes on
> end. . . . I've never seen anybody take more time than you have to get in the evidence
> that you got in yesterday. You understood that at the bench yesterday and you
> acknowledged it, and then, today, you're undoing everything that we talked about. . .
> . I will tell you, though, because this is important and now you do understand what
> I'm going to do and why we're not going to waste the jury's time anymore, if you
> switch paths and you are efficient and your things are working, I'll give you another
> 40 minutes because, at the end of the day, I don't want your client to suffer for your
> strategies. So I'm going to give you that time.

A district court has "wide discretion in the management of its docket and the presentation of

evidence." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994). The record demonstrates that the

Court properly exercised its discretion to manage its docket and the presentation of evidence: Plaintiffs did not object to the five-hour limit at the final pretrial conference, squandered their time during the trial, failed to heed warnings from the Court, and admitted that they were using stall tactics. Under these circumstances, the Court did not err by limiting Plaintiffs' time to present their case to the jury.

### 7. Jury Verdict Was Not Against the Great Weight of the Evidence

Over the course of three days, the jury was presented with evidence, including video evidence of the incident, and determined that Baucom did not use excessive force against Jackson. (Dkt. 131). In their motion, Plaintiffs' final heading reads: "The verdict is against the weight of the evidence[.]" (Dkt. 138, at 7). However, Plaintiffs present no facts or evidence. Plaintiffs merely include a paragraph of information about excessive force standards, without mounting a challenge to the jury instructions. Without more, this Court will not "invade the fact-finding province of the jury." *Jones v. City of San Antonio*, No. 14-CV-328 (RCL), 2017 WL 3741559, at *3 (W.D. Tex. Aug. 30, 2017), *aff'd*, 757 F. App'x 410 (5th Cir. 2019) (finding that the jury verdict was not against the great weight of the evidence in an excessive force case). Having failed to meet their burden of showing that the jury's verdict was against the great weight of the evidence, Plaintiffs cannot secure a new trial on this basis.

### B. Motion for Reconsideration

Plaintiffs ask the Court to reconsider its grant of summary judgment in favor of Caldwell, Burleson County, and Bennett, arguing the Court prematurely granted summary judgment before Plaintiffs had conducted discovery, save for a deposition of Baucom. Instead, it was Plaintiffs' failure to timely conduct thorough discovery that hindered their ability to oppose the motions. The Court entered a scheduling order in this case setting out the dispositive motions deadline as May 10, 2021. (Dkt. 26). On that date, Caldwell, Burleson County, and Bennett filed motions for summary

judgment, with Caldwell also filing a renewed motion to dismiss, (Dkts. 58, 60), which the Court later granted, (Dkt. 108). Plaintiffs did not seek to extend the discovery deadline until May 24, 2021, two weeks after the dispositive motions deadline. (Dkt. 61). In their extension motion, Plaintiffs asked for 90 days to conduct discovery and file responses to the summary judgment motions. (*Id.* at 2). The extension motion was referred to the magistrate judge who granted in part and denied in part, finding that an extension of the discovery period was not warranted since "Plaintiffs offer no explanation of what additional discovery is needed . . . or why they waited" to make their request and giving Plaintiffs two weeks to file their responses. (Dkt. 67, at 2–3).

A court may grant an extension of time "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Plaintiffs failed to show excusable neglect. Additionally, if a party seeks reconsideration of a summary judgment order based on the argument that additional discovery would have defeated the motion for summary judgment, the motion for reconsideration is procedurally improper unless the party sought a continuance pursuant to Rule 56(f) before the summary judgment ruling. *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996) ("We have stated that 'Rule 56 does not require that any discovery take place before a motion for summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy.") (cleaned up); *Fanning v. Metro. Transit Auth. of Harris Cty., Tex.*, 141 F. App'x 311, 314–15 (5th Cir. 2005) ("Further, our court has foreclosed a party's contention on appeal that it had inadequate time to marshal evidence to defend against summary judgment when the party did not seek Rule 56(f) relief before the summary judgment ruling.").

As for Plaintiffs' other arguments, Plaintiffs offer no legal or factual evidence to support their claims. To the contrary, the record shows that at the summary judgment phase, Plaintiffs lacked controverting evidence to defeat summary judgment. And now, with their motion for reconsideration, Plaintiffs still have not presented any new evidence. A motion for reconsideration

11

cannot be used to "rehash[] evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Rather, a Rule 59(e) motion "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted). Plaintiffs have not done so, leaving the Court with no basis to grant Plaintiffs relief.

Finally, Plaintiffs complain the Court's adoption of the magistrate judge's report and recommendation was improper. According to Plaintiffs, the Court adopted it "without an adequate de novo review of the all the evidence." (Dkt. 138, at 18). In its order adopting the report and recommendation, the Court explicitly stated that it had conducted a de novo review. (Dkt. 99, at 1). The Court rejects Plaintiffs' argument that the Court erred in adopting the report and recommendation.

## IV.  CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiffs' Rule 59 Motion for New Trial After Summary Judgment and After Jury Trial, (Dkt. 138), is **DENIED.**

**SIGNED** on May 2, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE